**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MITCHELL B. LEAK,
Plaintiff-Appellant,

v.

No. 95-1392

MARVIN RUNYON, Postmaster
General; UNITED STATES POSTAL
SERVICE,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
M. J. Garbis, District Judge.
(CA-93-1982-MJG)

Argued: June 6, 1996

Decided: July 11, 1996

Before ERVIN, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Joseph Nolan, Jr., PIERSON, PIERSON &
NOLAN, Baltimore, Maryland, for Appellant. Allen F. Loucks,
Assistant United States Attorney, Baltimore, Maryland, for Appellees.
**ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore,
Maryland; R. Andrew German, Chief Counsel, Brian M. Reimer,
Appellate Division, UNITED STATES POSTAL SERVICE, Wash-
ington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mitchell Leak (Leak) appeals the district court's grant of summary judgment in favor of his employer, the United States Postal Service (the Postal Service), in his case seeking review of the Postal Service's final agency decision dismissing his Equal Employment Opportunity (EEO) complaint. We affirm on the reasoning of the district court.

I.

A. Leak's Employment History and Termination .

Leak worked for more than ten years as a mail handler for the Postal Service at the Main Post Office in Baltimore, Maryland. Throughout his employment with the Postal Service, he exhibited chronic, lengthy, unpredictable, and partially unexplained periods of absenteeism. Leak suffers from post traumatic stress disorder caused by two injuries that he received during the Vietnam War. After giving Leak numerous warnings and suspending him on six occasions for absenteeism, the Postal Service notified Leak by a letter dated May 1, 1992, that it intended to remove him from employment within thirty days.

Leak and his union then challenged his removal by filing a griev- ance under the relevant collective bargaining agreement. On July 8, 1992, the parties resolved the grievance by entering into a written agreement known as a "Last Chance Agreement." As the name implies, under this agreement, the Postal Service gave Leak one last chance to retain his position. Specifically, the Postal Service agreed to hold the notice of proposed removal in abeyance for one year and then to dispose of it as long as Leak met every attendance or work performance requirement during that year. If he failed to meet any requirement, then the Postal Service could reinstate the removal

2

action. Furthermore, the Last Chance Agreement provided that the removal action would be reinstated with no rights of appeal to any forum if he failed to meet the terms set forth in the agreement.

Consistent with his past behavior, Leak failed to report for duty less than three months after he signed the Last Chance Agreement. Four days later, Leak informed the Postal Service that he was in a severe state of depression, which led the Postal Service's employee assistance program to refer Leak to a therapist. In a letter dated October 3, 1992, the therapist attributed Leak's absence from work to severe depression.

Subsequently, in accordance with the Last Chance Agreement, the Postal Service reinstated the May 1, 1992, notice of proposed removal for failing to report for duty. According to a Letter of Decision issued by Peter Bernard, the plant manager, Leak's removal became effective November 9, 1992. The Letter of Decision did not provide notice that Leak had a right to file either a mixed case complaint[1] with the Postal Service's EEO office or a mixed case appeal [2] with the Merit System Protection Board (MSPB), see 29 C.F.R. § 1614.302(b).[3]

_____

[1] "A mixed case complaint is a complaint of employment discrimination filed with a Federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board. The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address." 29 C.F.R. § 1614.302(a)(1).

[2] "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R.§ 1614.302(a)(2).

[3] 29 C.F.R. § 1614.302(b) provides as follows:

> An agency shall inform every employee who is the subject of an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB. The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and that whichever is filed first shall be considered an election to proceed in that forum.

3

According to the Postal Service, the lack of notice was due to Leak's unequivocal waiver of appeal rights in the Last Chance Agreement.

B. Leak's Administrative Appeals from His Removal.

On December 7, 1992, Leak signed a form noting an appeal of his removal to the MSPB. On this form, Leak complained that his removal violated the Americans with Disabilities Act of 1990 (ADA), see 42 U.S.C. § 12101-12213. Then, on January 5, 1993, Leak sought counselling from the Postal Service's EEO counselor by completing a "Request for Counselling" form. On the form, Leak indicated that he had not filed an MSPB appeal. The next day, January 6, 1993, Leak filed the MSPB appeal form that he had signed on December 7, 1992. Leak did not correct his Request for Counselling form or inform his EEO counselor that he had filed an appeal with the MSPB. Relying on Leak's representation that he had not filed an MSPB appeal, on January 15, 1993, the EEO counselor issued Leak a "Notice of Right to File Individual Complaint." Pursuant to this notice, on January 19, 1993, Leak filed a formal, individual EEO complaint, alleging handicap discrimination and designating an attorney representative.

Subsequently, the Postal Service filed a motion to dismiss Leak's MSPB appeal on the dual grounds that the appeal was untimely and that it was foreclosed by his waiver of appeal rights in the Last Chance Agreement. Leak opposed the motion, arguing that the appeal was timely because any delay in filing was caused by his psychiatric condition and the Postal Service's failure to provide him with notice of his MSPB appeal rights in the November 4, 1992, Letter of Decision and that his appeal was not foreclosed because he had complied with the Last Chance Agreement.

On April 6, 1993, an MSPB Administrative Law Judge (ALJ) held a pre-hearing settlement conference with the parties. At this conference, Leak's attorney and the Postal Service informed the ALJ that they had reached a settlement that would be reduced to written form, signed by both parties, and then faxed to her the following day. The settlement provided that Leak's official record would reflect that he resigned on November 9, 1992, due to medical reasons and that he

4

would be reinstated if he recovered and passed a fitness-for-duty examination.

Leak, however, refused to sign the settlement agreement. Neither Leak nor his attorney advised the ALJ of Leak's refusal. Having not received the signed agreement by April 7, 1993, as promised by Leak's counsel nor any explanation for the delay, the ALJ issued an order on April 8, 1993, requiring Leak to show cause why the appeal should not be dismissed as withdrawn. For reasons still unexplained, neither Leak nor his attorney filed any response. On April 12, 1993, the ALJ issued an Initial Decision dismissing Leak's appeal as withdrawn on grounds of abandonment and informing him that he could ask the MSPB to review the dismissal. Leak, again for unexplained reasons, did not request a review of the dismissal. Therefore, the dismissal became final on May 18, 1993.

Pursuant to 29 C.F.R. § 1614.107(d), the Postal Service dismissed Leak's EEO complaint on June 8, 1993, as foreclosed by Leak's previous filing of an MSPB appeal.

C. Leak's Appeal to the District Court.

Leak appealed the Postal Service's final agency decision to dismiss his EEO complaint to the district court, arguing that the unfortunate consequence of his course of action was due to the Postal Service's failure to give him correct information about how to proceed. The Postal Service moved for summary judgment on the ground that Leak's EEO complaint was procedurally barred and that it gave Leak correct information at all times.

The district court characterized the issue before it as "whether the Postal Service's final agency decision dismissing Leak's EEO complaint was proper." (J.A. 18). Concluding the dismissal was proper, the district court, in a written Memorandum Opinion and Order dated September 23, 1994, affirmed the Postal Service's decision by granting summary judgment in favor of the Postal Service. The district court based its conclusion upon the regulatory requirement that federal employees with discrimination claims may file either an appeal with the MSPB or an EEO complaint with their agency, but not both.

5

See 29 C.F.R. §§ 1613.403, 1614.107(d). Specifically, the district court reasoned:

> Because Leak first filed his MSPB appeal, he chose the MSPB route in lieu of an EEO complaint. Therefore, he could not properly file an EEO complaint. The regulations required the Postal Service agency to dismiss his claim. 29 C.F.R. § 1614.107(d) (1993).

(J.A. 19).

The district court then rejected Leak's contention that his EEO complaint should not have been dismissed because the Postal Service failed to notify him of his appeal rights. In this regard, the district court concluded that Leak had failed to present evidence "from which, on the most favorable view possible, a fact finder could reasonably conclude that the agency's (allegedly) erroneous statement that there were no appeal rights caused the Plaintiff to fail to comply with the Order of the MSPB A[L]J." (J.A. 21). Finally, the district court concluded that Leak failed to make an adequate showing to support any theory by which the Postal Service's alleged error in notification "would be a cause of Leak's and his attorney's failure to understand that the EEO complaint was ineffective due to the earlier filing of the MSPB appeal. Whatever link there may [have been was] too attenuated to warrant the relief Plaintiff seeks from the consequences of his action in failing to comply with the A[L]J's Orders." (J.A. 22).

Subsequently, Leak filed a timely motion to alter or amend the judgment of the district court under Federal Rule of Civil Procedure 59(e). The district court denied this motion in a written Order and Memorandum Opinion dated February 7, 1995.

Leak timely filed this appeal from the entry of summary judgment.

II.

Whether the district court properly entered summary judgment in the Postal Service's favor is a matter of law that we review de novo. Higgins v. E.I. DuPont de Nemours and Co., 863 F.2d 1162, 1167

6

(4th Cir. 1988). Summary judgment is appropriate"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, we fully agree with the district court's reasoning in granting summary judgment in favor of the Postal Service, and therefore, affirm the judgment below on the reasoning of the district court.

According to the Code of Federal Regulations, "[a]n aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the MSPB pursuant to 5 C.F.R. 1201.151, but not both." 29 C.F.R. § 1614.302(b) (1995). If an aggrieved person does file both a mixed case complaint and an appeal on the same matter with the MSPB, then "whichever[was] filed first shall be considered an election to proceed in that forum." Id. The federal government adopted this election requirement to avoid needless duplication of investigation and review by the MSPB and the EEO office within the agency. 48 Fed. Reg. 19,705 (1983) (revising 29 C.F.R. pt. 1613). Therefore, if the complainant has raised the matter of discrimination in an appeal to the MSPB, then the EEO arm of the agency involved must dismiss the EEO complaint. See 29 C.F.R. § 1614.107.

Here, the record is undisputed that Leak filed an appeal of the Postal Service's decision to remove him from duty with the MSPB on the ground of handicap discrimination before he filed his EEO complaint making the same allegation. Therefore, under 29 C.F.R. § 1614.107(d), the Postal Service was required to dismiss Leak's EEO complaint.

We agree with the district court that Leak cannot avoid the mandatory dismissal of his EEO complaint because the Postal Service failed to notify him of his appeal rights as provided in 29 C.F.R. § 1614.302(b).[4] Fatal to Leak's claim is his complete failure to offer

_____

[4] The issue of whether the Last Chance Agreement barred Leak from pursuing any appeal of his dismissal is not before us because the Postal Service did not rely upon this ground in dismissing Leak's EEO com-

7

evidence even remotely suggesting a causal connection between the Postal Service's failure to give him notice of his appeal rights and his actions in abandoning his MSPB appeal and filing his EEO complaint after he had already filed his MSPB appeal. Indeed, Leak does not argue, let alone attest in an affidavit of record, that his actions would have been any different had the Postal Service notified him of his filing options. In other words, Leak fails to allege that with the proper notice he would not have abandoned his MSPB appeal or filed a complaint with the EEO prior to filing an MSPB appeal. He simply argues that because the Postal Service disregarded a regulatory mandate, it should not be allowed to dismiss his EEO complaint. Without a showing of prejudice from his failure to receive notice, the law does not provide Leak a remedy.

We have reviewed Leak's other various arguments and conclude that they are without merit.

III.

In conclusion, we fully agree with the district court's reasoning in entering summary judgment in favor of the Postal Service, and therefore affirm the judgment below on that basis.

AFFIRMED

_____

plaint. Under the Chenery doctrine, reviewing courts may not affirm administrative action on grounds not relied upon by the acting agency. See Securities and Exchange Comm'n v. Chenery Corp. , 318 U.S. 80, 94 (1943). Accordingly, for purposes of this appeal, we assume without deciding that the Postal Service was required to give Leak notice pursuant to 29 C.F.R. § 1614.302(b).

8